IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DOMINION ENERGY TRANSMISSION, INC.,

        Plaintiff,

v.                                CIVIL ACTION NO. 1:19CV182
                                      (Judge Keeley)

0.11 ACRES OF LAND, MORE OR LESS,
IN DODDRIDGE COUNTY, WEST VIRGINIA,
ET AL.,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

The plaintiff, Dominion Energy Transmission, Inc. ("Dominion"), seeks to condemn certain temporary easements necessary to repair and stabilize a slip of property neighboring their existing easement, which was acquired to construct and operate a natural gas pipeline that runs through West Virginia. To facilitate expeditious remediation of the slip, Dominion seeks partial summary judgment regarding its right to condemn the temporary easements, and a preliminary injunction allowing it to access and possess the property prior to paying just compensation. After carefully considering the record and the evidence adduced at a hearing on September 27, 2019, for the following reasons, the Court **GRANTS** Dominions's motion for partial summary judgment (Dkt. No. 3) and motion for preliminary injunction and immediate possession (Dkt. No. 4).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

## I. LEGAL FRAMEWORK

This proceeding is governed by the Natural Gas Act ("NGA" or "the Act"), which provides private natural gas companies the power to acquire property by eminent domain. 15 U.S.C. § 717 et seq. Under the Act, a "natural-gas company" is "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." Id. § 717a(6). Such companies may build and operate new pipelines only after obtaining a certificate of public convenience and necessity ("Certificate") from the Federal Energy Regulatory Commission ("FERC" or "the Commission"). As the Fourth Circuit has summarized:

> The procedure for obtaining a certificate from FERC is set forth in the NGA, and its implementing regulations. The process begins with an application from the gas company that includes, among other information, (1) a description of the proposed pipeline project, (2) a statement of the facts showing why the project is required, and (3) the estimated beginning and completion date for the project. Notice of the application is filed in the Federal Register, public comment and protest is allowed, and FERC conducts a public hearing on the application. As part of its evaluation, FERC must also investigate the environmental consequences of the proposed project and issue an environmental impact statement. At the end of the process FERC issues a certificate if it finds that the proposed project "is or will be required by the present or future public convenience and necessity." In its order issuing a certificate, FERC specifies a date for the completion of construction and the start of service. The certificate

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

> may include any terms and conditions that FERC deems
> "required by the public convenience and necessity."

E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 818 (4th Cir. 2004)

(internal citation omitted).

"Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise 'the right of eminent domain' over any lands needed for the project." Id. (citing 15 U.S.C. § 717f(h)). The authority by which natural gas companies may exercise the right is set forth fully in the Act:

> When any holder of a certificate of public convenience
> and necessity cannot acquire by contract, or is unable to
> agree with the owner of property to the compensation to
> be paid for, the necessary right-of-way to construct,
> operate, and maintain a pipe line or pipe lines for the
> transportation of natural gas, and the necessary land or
> other property, in addition to right-of-way, for the
> location of compressor stations, pressure apparatus, or
> other stations or equipment necessary to the proper
> operation of such pipe line or pipe lines, it may acquire
> the same by the exercise of the right of eminent domain
> in the district court of the United States for the
> district in which such property may be located, or in the
> State courts. The practice and procedure in any action or
> proceeding for that purpose in the district court of the
> United States shall conform as nearly as may be with the
> practice and procedure in similar action or proceeding in
> the courts of the State where the property is situated:
> *Provided*, That the United States district courts shall
> only have jurisdiction of cases when the amount claimed
> by the owner of the property to be condemned exceeds
> $3,000.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

15 U.S.C. § 717f(h). Notably, the "state procedure requirement has been superseded" by the implementation of Fed. R. Civ. P. 71.1, which provides the applicable procedure in most condemnation cases. See Sage, 361 F.3d at 822.

There are, thus, three essential prerequisites that must be met prior to any exercise of the power of eminent domain under the NGA. The natural gas company must only establish that "(a) It is a holder of a certificate of public convenience and necessity; (b) It needs to acquire an easement, right-of-way, land or other property necessary to the operation of its pipeline system; and (c) It has been unable to acquire the necessary property interest from the owner." Rover Pipeline LLC v. Rover Tract No(s) WV-DO-SHB-011.510-ROW-T & WV-DO-SHB-013.000-ROW-T, No. 1:17cv18, 2017 WL 5589163, at *2 (N.D. W. Va. Mar. 7, 2017).

Further, the law in the Fourth Circuit is clear that, "once a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction." Sage, 361 F.3d at 828. A preliminary injunction is proper when the plaintiff can "[1] establish that he is likely to succeed on the merits, [2] that he

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).[1]

## II. BACKGROUND

On October 13, 2017, FERC granted a Certificate to Dominion authorizing construction of 37.5 miles of natural gas pipeline in West Virginia ("the Project") (Dkt. No. 1 at 4). To construct the Project, Dominion obtained easements by agreement with landowners and by eminent domain. On March 12, 2019, during a "voluntary" construction stand-down, Dominion became aware that some earth had begun to slip onto property outside an existing easement that it had obtained by agreement. Id. at 5. Aware that the slip would worsen without remediation, Dominion attempted to contact the owner of the neighboring property, defendant Anthony Lake ("Lake"), for

---

[1] Because the Court refers to the facts and analysis in Sage throughout this Opinion and Order, it bears noting that Sage applied the preliminary injunction test from Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 193-96 (4th Cir. 1977), which was abrogated by the Supreme Court's holding in Winter. Real Truth About Obama, Inc. v. Fed. Election Com'n, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds and remanded, 559 U.S. 1089 (2010), standard reaffirmed in 607 F.3d 355 (4th Cir. 2010). Nonetheless, Sage is binding on this Court to the extent that its analysis of each preliminary injunction factor comports with the requirements of Winter.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

his consent to repair and stabilize the slip. Id. at 1, 5. Because it was unable to contact him, Dominion requested a variance, pursuant to its FERC Certificate, for additional temporary easements on the neighboring property to conduct earth slippage remediation (Dkt. Nos. 1 at 5; 1-5; 1-6). On June 28, 2019, FERC granted Dominion's request for a variance for a temporary work space of up to 0.13 acres to remediate the slip (Dkt. Nos. 1 at 5-6; 1-7).

On September 16, 2019, Dominion sought to exercise its authority over 0.11 acres of property located in the Northern District of West Virginia, which it has been unable to acquire by agreement, by filing a complaint pursuant to the NGA and Federal Rule of Civil Procedure 71.1 (Dkt. No. 1). As required by Rule 71.1(c)(2), Dominion included a description of the property, as well as the interests to be taken (Dkt. Nos. 1 at 3-6; 1-8). On that same day, Dominion moved for partial summary judgment on its right to condemn the subject property and sought a preliminary injunction allowing it to possess immediately the temporary easements (Dkt. Nos. 3; 4). To date, no defendant has appeared in the case or filed an answer pursuant to Fed. R. Civ. P. 71.1(e)(2).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

On September 27, 2019, the Court conducted an evidentiary hearing at which, despite having been served by publication, no defendant appeared. Dominion presented the testimony of Matthew R. Sickles ("Sickles"), the Manager of Engineering for the Project, and Andrew L. Lasser ("Lasser"), a Senior Land Agent for the Project.

### III. MOTION FOR PARTIAL SUMMARY JUDGMENT

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION**
**FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

The Court may only exercise its equitable power to grant a preliminary injunction after determining "that a gas company has the substantive right to condemn property under the NGA." Mid Atlantic Express, LLC v. Baltimore Cty., Md., 410 F. App'x 653, 657 (4th Cir. 2011) (unpublished decision) (quoting Sage, 361 F.3d at 828). As discussed, to establish that it has the right to condemn, Dominion must demonstrate only that (1) it holds a FERC Certificate, (2) it needs to acquire the easements, and (3) it has been unable to acquire them by agreement. 15 U.S.C. § 717f(h).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

Dominion has satisfied each of these elements, and is entitled to partial summary judgment regarding its right to condemn. First, the parties cannot dispute that FERC issued a Certificate to Dominion on October 13, 2017, and issued the requested variance to Dominion on June 28, 2019 (Dkt. Nos. 1-2, 1-7). Second, Dominion has established that the temporary easements are "necessary and consistent with the easement rights that FERC authorized [Dominion] to obtain." Rover Pipeline LLC, 2017 WL 5589163, at *2. Indeed, the uncontested evidence in this case demonstrates that the temporary easements are necessary for repairing and stabilizing the slip.

Finally, although Dominion has attempted to negotiate with Lake, it has been unable to contact him despite having negotiated with him in the past (Dkt. No. 1 at 5). The Court thus concludes that Dominion has been unable to acquire the easements by contract or agreement. Therefore, because Dominion has satisfied the three requirements of 15 U.S.C. § 717f(h), the Court confirms Dominion's right to condemn the temporary easements described in the complaint and **GRANTS** its motion for partial summary judgment (Dkt. No. 3).

## IV. MOTION FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION

Given its authority to condemn the subject easements, Dominion seeks a preliminary injunction permitting it to access and possess

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

the temporary easements prior to paying just compensation (Dkt. No. 4). A preliminary injunction is proper when the plaintiff can "[1] establish that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter, 555 U.S. at 20. "[A]ll four requirements must be satisfied," Real Truth About Obama, Inc., 575 F.3d at 346, and "[a] preliminary injunction shall be granted only if the moving party clearly establishes entitlement," Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017).

The Court is mindful that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24. Moreover, "[m]andatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." Sage, 361 F.3d at 828 (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)). Having given heightened scrutiny to Dominion's request for a preliminary injunction in light of the factors outlined in Winter, the Court concludes that the exigencies warrant such relief.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

### A.   Dominion is likely to succeed on the merits.

As discussed earlier, Dominion has satisfied the requirements of § 717f(h) and is authorized to condemn the temporary easements at issue. It has succeeded on the merits and, thus, has satisfied the first factor. See Sage, 361 F.3d at 829-30.

### B.   Dominion is likely to suffer irreparable harm.

Dominion must next establish that it will be irreparably harmed in the absence of an injunction. Winter, 555 U.S. at 20. Its harm must be likely rather than merely possible. Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc., 700 F. App'x 251, 263 (4th Cir. 2017) (citing Winter, 555 U.S. at 22)). After carefully reviewing the record, the Court concludes that Dominion will suffer irreparable harm.

Dominion first avers that courts have routinely held that undue delay, significant financial harm, and not meeting FERC obligations are forms of irreparable harm (Dkt. No. 4-1 at 7). Although it is true that the likelihood that a natural gas company will be unable to comply with a FERC deadline constitutes irreparable harm, see, e.g., Sage, 361 F.3d at 829 (finding irreparable harm where "[i]t would not be possible to meet FERC's deadline without a preliminary injunction"), there is no such

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION**
**FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

threat here. As Dominion notes in its complaint, it "voluntarily" stopped construction on the Project, and it has been in a project stand-down since December 7, 2018 (Dkt. Nos. 1 at 5). Because it is unclear when Dominion will resume construction, it is speculative, at best, to suggest that failing to acquire immediate possession to remediate this slip would prevent Dominion from complying with FERC deadlines.

Nevertheless, under these circumstances, Dominion's anticipated economic losses constitute irreparable harm. Typically, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough." Di Biase, 872 F.3d at 230 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974)). However, this maxim is tied to "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date." Id. In other words, "[w]hile it is beyond dispute that economic losses generally do not constitute irreparable harm, this general rule rests on the assumption that economic losses are recoverable." N.C. Growers' Ass'n, Inc. v. Solis, 644 F. Supp. 2d 664, 671 (M.D.N.C. 2009).

A plaintiff may "overcome the presumption" against a preliminary injunction regarding wholly economic harm, Di Biase,

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

872 F.3d at 230 (citing <u>Hughes Network Syss., Inc. v. InterDigital
Commc'ns Corp.</u>, 17 F.3d 691, 694 (4th Cir. 1994)), in the
"extraordinary circumstances . . . when monetary damages are
unavailable or unquantifiable." <u>Handsome Brook</u>, 700 F. App'x at 263
(citing <u>Multi-Channel TV Cable Co. v. Charlottesville Quality Cable
Operating Co.</u>, 22 F.3d 546, 551-52 (4th Cir. 1994)). Here, it is
beyond dispute that, if Dominion suffers financial losses as the
result of its inability to access the condemned easements, it will
not be able to recover those losses in this or any other
litigation. This weighs in favor of finding irreparable harm. <u>See
In re Transcon. Gas Pipeline Co., LLC</u>, 1:16cv02991, 2016 WL
8861714, at *8 (N.D. Ga. Nov. 10, 2016).

Treating economic harm as irreparable under the facts of this
case is also consistent with the Fourth Circuit's holding in <u>Sage</u>,
which considered several species of irreparable harm, including
economic repercussions:

> The district court found that without a preliminary
> injunction the Patriot Project would suffer "undue delay"
> and that this delay would cause "significant financial
> harm both to ETNG and some of its putative customers."
> This finding has ample support in the record. . . .
> Constructing a ninety-four-mile pipeline is a complex
> project that can only progress in phases. Certain
> portions of the project have to be completed before
> construction can begin on other portions. Therefore, as
> the district court recognized, "any single parcel has the

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

> potential of holding up the entire project." . . .
> Furthermore, ETNG is under an order from FERC to complete
> construction and have the pipeline in operation by
> January 1, 2005. It would not be possible to meet FERC's
> deadline without a preliminary injunction.
>
> ETNG is also under contractual obligation to provide
> natural gas to several electric generation plants and
> local gas utilities by certain dates. Without a
> preliminary injunction, ETNG would be forced to breach
> these contracts. ETNG's inability to satisfy these
> commitments would have negative impacts on its customers
> and the consumers they serve. . . . ETNG estimates that
> it would lose in excess of $5 million if construction
> delay caused it to breach its contractual obligations to
> supply gas. Finally, delay in the construction of the
> pipeline would hinder economic development efforts in
> several Virginia counties.

Sage, 361 F.3d at 828-29 (internal citation omitted); see also

Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less, 768

F.3d 300, 316 (3d Cir. 2014) (holding that financial harm, along

with "safety and potential liability concerns," constituted

irreparable harm).

There is no doubt that Dominion will suffer irreparable

economic harm if it is not permitted to remediate the slip at

issue. At the evidentiary hearing, Dominion estimated that, in its

current state, it will cost approximately $50,000.00 a day to

repair the slip over the course of two weeks. If the slip worsens,

this cost would increase 25-50% depending on the circumstances,

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

plus approximately $5,000.00 to obtain an updated engineering plan to remediate the slip.

Moreover, "it is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute." SWN Prod. Co., LLC v. Edge, 2015 WL 5786739, at *5 (N.D. W. Va. Sept. 30, 2015)(quoting 7-Eleven, Inc. V. Khan, 977 F. Supp. 2d 214, 235 (E.D.N.Y. 2013)). If the slip is not repaired and stabilized, it will cause irreparable harm to both Dominion's existing easement, along which it is constructing a natural gas pipeline, and Lake's neighboring property. And, if left unchecked, the slip will threaten the safety of Dominion employees, who work in close proximity to heavy machinery. Cf. United Steelworkers v. Blaw-Knox Foundry & Mill Machinery, Inc., 319 F. Supp. 636, 641 (W.D. Pa. 1970) (finding threat to the health and safety of employees sufficient to justify the issuance of a preliminary injunction).

Therefore, Dominion has established that it will be irreparably harmed in the absence of a preliminary injunction.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

**C.   The balance of equities tips in Dominion's favor, and an
injunction is in the public interest.**

The third and fourth elements of the preliminary injunction
test require Dominion to establish clearly that the balance of
equities tips in its favor and that an injunction also is in the
public interest. Winter, 555 U.S. at 20. In cases involving
significant public interest, courts may "consider the balance of
the equities and the public interest factors together." As the
Fourth Circuit has explained:

> Even if Plaintiffs are likely to suffer irreparable harm
> in the absence of a preliminary injunction, we still must
> determine that the balance of the equities tips in their
> favor, "pay[ing] particular regard for the public
> consequences in employing the extraordinary remedy of
> injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305,
> 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). This is
> because "courts of equity may go to greater lengths to
> give 'relief in furtherance of the public interest than
> they are accustomed to go when only private interests are
> involved.'" E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808,
> 826 (4th Cir. 2004) (quoting Virginian Ry. Co. v. Sys.
> Fed'n No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed.
> 789 (1937)).

Int'l Refugee Assistance Project v. Trump, 857 F.3d 554, 602 (4th
Cir. 2017).

Particularly in light of the significant public interest at
issue, the irreparable harm Dominion likely will suffer outweighs
the effect of an injunction on the defendants. Granting Dominion

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION**
**FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

immediate access to remediate the slip now will actually limit the impact on Lake's property. Indeed, if the slip is left unchecked, Dominion would need to cut down far more trees than already necessary to remediate the slip. In addition, the fact that an injunction will temporarily deprive him of his land now rather than later is not "a type of an inherent harm that is irreparable," but rather an ordinary burden of citizenship. Sage, 361 F.3d at 829. At bottom, it is the NGA and the FERC Certificate that are responsible for any injuries to Lake, and delaying access until just compensation is paid will do nothing to alleviate this burden. See id. ("This is simply a timing argument . . . ."); Columbia Gas, 768 F.3d at 316 ("The Landowners have not stated any concrete injury other than the loss of the easements over their land . . . .").

Here, FERC concluded that "the public convenience and necessity" required approval of the Project, and that the "benefits that the [Project] will provide to the market outweigh any adverse effects on existing shippers, other pipelines and their captive customers, and landowners and surrounding communities" (Dkt. No. 1-2 at 32). And by granting Dominion's requested variance, FERC similarly concluded that the temporary easements for stabilizing and repairing the slip "is necessary to avoid addition and/or

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

greater impacts" to Dominion's existing easement and Lake's neighboring property (Dkt. No. 1-7 at 2). The Court will not second-guess FERC's determination. Moreover, "the public has an interest in insuring that property owners enjoy the exclusive use of their property." <u>Markfork Coal Co. v. Smith</u>, No. 5:10-cv-00069, 2010 WL 742560, at *5 (S.D. W. Va. Feb. 26, 2010). Remediating the slip will, thus, serve the public interest by insuring that Lake can enjoy the exclusive use of his property.

In summary, the Court has carefully considered each of the four factors articulated in <u>Winter</u>, and has given them heightened scrutiny in light of Dominion's request for a mandatory preliminary injunction. Dominion has carried its burden to clearly establish that it will be irreparably harmed in the absence of a preliminary injunction, that the harm to Lake does not outweigh Dominion's harm, and that granting immediate access is in the public interest. Therefore, the Court **GRANTS** Dominion's motion for preliminary injunction and immediate possession of the easements at issue.

### V. CASH DEPOSIT

Having determined that immediate access is appropriate in this case, the Court must further determine the conditions under which such access should be granted. As an initial matter, the Court is

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

satisfied that Dominion is capable of providing "reasonable, certain, and adequate provision" that the defendant will obtain compensation prior to having their occupancy disturbed. <u>Sage</u>, 361 F.3d at 824 (citing <u>Cherokee Nation v. S. Kan. Ry. Co.</u>, 135 U.S. 641 (1890)). Dominion has repeatedly expressed a willingness to deposit money with the Court pursuant to Federal Rule of Civil Procedure 65(c) (Dkt. No. 4-1 at 8). Therefore, upon consideration of these facts, the Court finds that Dominion may immediately access and possess the relevant easements after the following conditions have been satisfied:

**(1)** Effective upon entry of this Memorandum Opinion and Order and satisfaction of the conditions discussed below, Dominion is granted immediate possession of the easements described in its complaint, consistent with the FERC Certificate and Variance.

**(2)** Pursuant to the Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(l), the right to immediate possession of the easements on this property is contingent upon Dominion satisfying two requirements as to security. First, pursuant to the provisions of Fed. R. Civ. P. 71.1(j), Dominion must deposit with the Clerk of Court ("Clerk") a certified check in an amount of $5,000.00 for the easements sought. The Clerk

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

shall deposit the amount received into the registry of this Court and then, as soon as the business of the Clerk's office allows, the Clerk shall deposit these funds into the interest-bearing Court Registry Investment System administered by the Administrative Office of the United States Courts as Custodian pursuant to Fed. R. Civ. P. 67.

**(3)** This value shall not be construed as any indication of the floor or ceiling of the ultimate amount of just compensation, if any, to which any interest-holder is entitled. Instead, the eventual compensation award by this Court, a jury, or a compensation commission may be lower, higher, or the same as the amount Dominion is required to provide as security.

**(4)** Pursuant to Fed. R. Civ. P. 71.1(j)(2), the deposit of these funds for the identified property shall constitute Dominion's agreement that the interest-holder can access up to $3,001.00. Such withdrawal is at the landowner's peril, and all defendants are advised that, if the ultimate compensation award is less than the amount withdrawn, the interest-holder will be liable for the return of the excess with appropriate interest. If multiple defendants claim an interest in any of the easements, each defendant claiming an interest can

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION
FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

withdraw only its proportionate share of the funds identified for that easement and attributable to its claimed interest.

**(5)** Furthermore, such defendants shall be entitled to interest calculated pursuant to 28 U.S.C. § 1961 from and after the date of entry of this Memorandum Opinion and Order on the difference between the principal amount deposited with the Court by Dominion and the amount of just compensation determined by the Court, if any, if such determination of just compensation to be paid exceeds the amount deposited by Dominion.

**(6)** A defendant who wishes to draw on the deposited funds shall file a motion for disbursement of funds with the Court and shall include a certificate of service evidencing service of the motion on all other persons with a property interest in the same parcel or easement, if any. Any person objecting to the disbursement shall have 14 days to file a written objection with the court. The Court will then resolve any objections and issue an order on the withdrawal request. If there are no other persons with an interest in the property, disbursement will be permitted only by a separate order of the Court, but the period for objections will not apply.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION**
**FOR PRELIMINARY INJUNCTION AND IMMEDIATE POSSESSION [DKT. NO. 4]**

## VI. CONCLUSION

In conclusion, for the reasons discussed, the Court:

**(1)** **GRANTS** Dominion's motion for partial summary judgment (Dkt. No. 3);

**(2)** **GRANTS** Dominion's motion for preliminary injunction and immediate possession (Dkt. No. 4); and

**(3)** As set forth above, **DIRECTS** Dominion to deposit funds prior to accessing and taking possession of the property.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED: September 30, 2019.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE